UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLA M. WHITE,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

Case No. 3:21-cv-12698
District Judge Robert H. Cleland
Magistrate Judge Anthony P. Patti

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 11), DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 12), and REMAND THIS MATTER TO THE COMMISSIONER

**I.**    **RECOMMENDATION**: For the reasons that follow, it is **RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary judgment (ECF No. 11), **DENY** Defendant's motion for summary judgment (ECF No. 12), and **REMAND** this matter to the Commissioner for action consistent with this report.

**II.**    **REPORT**

      Plaintiff, Carla M. White, brings this action under 42 U.S.C. §§ 405(g) and/or 1383(c)(3) for review of a final decision of the Commissioner of Social Security (Commissioner) denying her application for supplemental security income (SSI) benefits. This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 11), the Commissioner's cross-motion for summary judgment (ECF No. 12), Plaintiff's reply (ECF No. 13), and the administrative record (ECF No. 9).

### A.     Background and Administrative History

#### 1.     Prior appeal

On March 3, 2009, ALJ Ethel Revels issued an unfavorable decision with respect to Plaintiff's June 2006 application for SSI benefits. (ECF No. 9, PageID.115-127.) ALJ Revels concluded that Plaintiff had the RFC . . .

> . . . to perform sedentary work . . . except the claimant can lift 10 pounds occasionally and less than 10 pounds frequently [*i.e., exertional limitations*]. The work must be limited to simple, repetitive tasks due to moderate limitations in the ability to maintain concentration for extended periods and in the ability to carry out detailed instructions due to pain and symptoms from her mental disorder [*i.e., limitations on concentration, persistence or pace*]. The work must not be with the general public or wherein co-workers' completion of their work is dependent on the claimant's completion of her task, such as that of a team member [*i.e., limitations on social functioning*]. The claimant must not work at hazardous heights or around dangerous machinery [*i.e., environmental limitations*].

(ECF No. 9, PageID.122; *see also id.*, PageID.121.) On September 10, 2009, the Appeals Council denied Plaintiff's request for review. (*Id.*, PageID.128-131.)

On November 22, 2011, ALJ McGovern dismissed Plaintiff's January 31, 2011 request for hearing and stated that "the determination dated December 1, 2010 remains in effect." (ECF No. 9, PageID.132-136.) On January 26, 2012, the Appeals Council denied Plaintiff's request for review. (*Id.*, PageID.137-138.) On

December 5, 2013, ALJ Connolly dismissed Plaintiff's August 16, 2012 request for hearing and stated that "the determination dated July 10, 2012 remains in effect." (*Id.*, PageID.139-143.)

### 2. Instant appeal

Plaintiff alleges her disability began on March 2, 2018, at the age of 45. (ECF No. 9, PageID.309.) In her disability report, she lists "back injury" as limiting her ability to work. (*Id.*, PageID.347.) Plaintiff's application was denied on September 26, 2018. (*Id.*, PageID.144-170.)

Plaintiff requested a hearing by an Administrative Law Judge (ALJ). (*Id.*, PageID.171-172.) On September 29, 2020, ALJ Beatty held a hearing, at which Plaintiff and a vocational expert (VE), Alison Reno, testified. (*Id.*, PageID. 65-113.) On October 27, 2020, ALJ Beatty issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.*, PageID.45-64.)

Plaintiff submitted a request for review of the hearing decision/order. (*Id.*, PageID.305-307.) However, on September 16, 2021, the Appeals Council denied Plaintiff's request for review. (*Id.*, PageID.34-39.) Thus, ALJ Beatty's decision became the Commissioner's final decision. Plaintiff timely commenced the instant action on November 18, 2021. (ECF No. 1.)

3

### B. Plaintiff's Medical History

The administrative record contains close to 1,500 pages of medical records (*see* ECF No. 9, PageID.418-1918 [Exhibits D1F to D17F]), which were available to the ALJ at the time of his October 27, 2020 decision (*id.*, PageID.59, 62-64), and will be discussed in detail, as necessary, below.

### C. The October 27, 2020 Administrative Decision

At the beginning of the administrative decision currently under review, the ALJ noted the prior decision, acknowledged *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997), stated "there is new and material evidence pertaining to the unadjudicated period that changes the prior [RFC][,]" and concluded he was "not bound to adopt the [RFC] used in the prior opinion." (ECF No. 9, PageID.48.) Then, pursuant to 20 C.F.R. § 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 24, 2018, the application date. (*Id.*, PageID.50.) At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease status post fusion and laminectomy, cervical spine disorder status post-surgery, and obesity. (*Id.*, PageID.50-51.) At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.*, PageID.51-52.) **Between Steps 3 and 4** of the

4

sequential process, the ALJ evaluated Plaintiff's residual functional capacity (RFC)[1] and determined that Plaintiff had the RFC:

> . . . to perform light work . . . [*i.e., exertional limitations*] except: She is capable of frequently reaching overhead and in all directions bilaterally. She [can] frequently handle and finger items bilaterally [*i.e., manipulative limitations*]. The claimant can climb ramps and stairs occasionally, but can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl [*i.e., postural limitations*]. The claimant can never work at unprotected heights or around moving mechanical parts, and can never operate a motor vehicle [*i.e., environmental limitations*]. She requires a cane for ambulation [*i.e., exertional limitation*].

(*Id.*, PageID.52-57.) At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id.*, PageID.57.) At **Step 5**, the ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as a document preparer (DOT No. 249.587-018), a surveillance system monitor (DOT No. 379.367-010), and an address clerk (DOT No. 209.587-010). (*Id.*, PageID.58-59.) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since April 24, 2018, the date the application was filed. (*Id.*, PageID.59.)

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

### D. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.  Analysis

Plaintiff presents two arguments in this appeal, each of which concerns opinion evidence: (1) "The ALJ erred by failing to properly evaluate the persuasiveness of every medical opinion under 20 C.F.R. § 416.920c[;]" and, (2) "The ALJ's determination that the opinions from the State agency examining and reviewing psychologists were not persuasive is unsupported by substantial evidence as required by law." (ECF No. 11, PageID.1936-1944; *see also* ECF No. 13.)

The Commissioner disagrees, arguing that "[t]he ALJ's evaluation of the medical opinions in the record did not provide a basis for remand." (ECF No. 12, PageID.1952.)

### 1. Consideration And Articulation Of Medical Opinions (20 C.F.R. § 416.920c)

ALJ Beatty stated he "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c." (ECF No. 9, PageID.52.)

As to articulation, the regulation provides: "We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record." 20 C.F.R. § 416.920c(b). Of particular import is the explanation that the supportability and consistency factors . . .

> . . . *are the most important factors* we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 416.920c(b)(2) (emphasis added).

### 2. Physical health opinion evidence

Citing 20 C.F.R. 416.920c, Plaintiff argues that the ALJ failed to properly evaluate the persuasiveness of every medical opinion, namely one concerning

8

physical health. (ECF No. 11, PageID.1936-1940.) The ALJ made the following, express mention of persuasiveness with respect to physical health opinion evidence:

- The June 22, 2012 consultative examination (CE) report of Atul C. Shah, M.D., internal medicine (ECF No. 9, PageID.428-437 [Ex. D3F]), as to which ALJ Beatty stated: "This assessment is not persuasive nor supportable because it is based on the claimant's condition in 2012."

- The March 6, 2018, April 6, 2018, and May 7, 2018 disability certificates signed by Jason Bitkowski, M.D. (ECF No. 9, PageID.479, 500, 508),[2] which ALJ Beatty construed as a "serious of short-term excuses to avoid work, housework, and driving for one-month or similar increments" and which the ALJ considered "neither inherently persuasive nor supportable," because they are "short term, with no specific limitations[,]" and "the issue of disability is reserved to the Commissioner."

- The September 24, 2018 physical RFC assessment of state agency consultant R. H. Digby, M.D. MPH (ECF No. 9, PageID.153-155 [Ex. D6A]), whose assessment ALJ Beatty considered "generally persuasive and supportable, because light work is consistent with the clinical and objective evidence, and the ability to drive and perform daily activities[,]" although ALJ Beatty also found that "the history of surgeries, clinical findings, and objective abnormalities are consistent with additional limitations of reaching, using the hands, and avoidance of hazards."

(ECF No. 9, PageID.53, 56.)

---

[2] While there are several record references to Dr. Bitkowski as "M.D.," there is at least one reference to him as "D.O." (*See* ECF No. 9, PageID.615.)

9

### a. David Jankowski, D.O.'s April 6, 2018 opinion

Plaintiff argues that ALJ Beatty erred by failing to consider the supportability and consistency factors – *i.e.*, 20 C.F.R. § 416.920c(c)(1),(2) – with respect to Dr. Jankowski's April 2018 medical opinion. (ECF No. 11, PageID.1936-1937.) By way of background, from March 2018 to September 2018, Plaintiff treated with Dr. Bitkowski and Dr. Jankowski of Summit Medical Group, Summit Physicians Group, and/or Complete Pain Specialists. (*See id.*, PageID.438-454 [Ex. D4F], 468-517 [Ex. D6F], 599-677 [Ex. D12F], 1915-1916 [Ex. D16F]; *see also* ECF No. 9, PageID.747, 1267.) The ALJ referenced Dr. Bitkowski's aforementioned disability certificates (as noted above) and also cited certain records, although not always with temporal specificity:

- March 6, 2018 (*id.*, PageID.509-512);
- April 6, 2018 (*id.*, PageID.481, 485-491, 503);
- May 7, 2018 (*id.*, PageID.468-475);
- July 18, 2018 (*id.*, PageID.591); and,
- September 20, 2018 (*id.*, PageID.599-601).

(*Id.*, PageID.53-54.) The ALJ also provided a general reference to "12F," which is an exhibit of Summit Medical Group office treatment records dated March 2, 2018 to September 20, 2018 (*id.*, PageID.599-677). (*Id.*, PageID.54.)

Among Plaintiff's pain treatment records is Dr. Jankowski's April 6, 2018 opinion on a U.S. Department of Labor (USDL) form for "Certification of Health Care Provider for Employee's Serious Health Condition (FMLA)[,]" which, incidentally, appears twice in the administrative record. (ECF No. 9, PageID.442-445, 492-495.) Although the parties <u>agree that the ALJ did not discuss this assessment</u> in his October 27, 2020 written decision (ECF No. 11, PageID.1937; ECF No. 12, PageID.1954), they are at odds about two points.

          i.        **Medical opinion (20 C.F.R. § 416.913(a)(2))**

The first disagreement is whether Dr. Jankowski's April 2018 form meets the definition of a medical opinion. "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the abilities listed in paragraphs (a)(2)(i)(A) through (D) and (a)(2)(ii)(A) through (F) of this section[,]" among which is: "Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)[.]" 20 C.F.R. § 416.913(a)(2)(i)(A).

In a section labeled "medical facts," Dr. Jankowski wrote that Plaintiff is unable to perform "lifting, bending, twisting, standing." (ECF No. 9-7, PageID.443, 493.) In a section labeled, "amount of leave needed," Dr. Jankowski

11

wrote that Plaintiff would need to be "completely off work," seemingly with "re-evaluation every 30 days," and also that it would be medically necessary for Plaintiff to be absent during flare-ups, due to "icing, elevation, [transcutaneous electrical nerve stimulation (TENS)] unit, physical therapy [and] therapeutic injections[,]" for which the "the frequency of flare-ups and the duration of related incapacity" was "unknown." (ECF No. 9, PageID.443-444, 493-494.)

Here, Plaintiff has the better argument. In contrast to the ALJ's criticism of Dr. Bitkowski's disability certificates as having "no specific limitations[,]" (ECF No. 9, PageID.53), Plaintiff notes that Dr. Jankowski's April 2018 assessment does contain specific limitations. (ECF No. 11, PageID.1938.) The Commissioner construes this form as giving "a vague statement that Plaintiff could not do certain activities within the parameters of her current job, with no specific qualifiers on how much she could lift, or how long she could bend, twist, or stand . . . ." (ECF No. 12, PageID.1956.) However, the case upon which the Commissioner relies is not persuasive, because it involved a quotation from the "subjective" portion of a Dr.'s report. *See Bruce v. Comm'r of Soc. Sec.*, No. 10-CV-10426, 2010 WL 5932326, at *8 (E.D. Mich. Dec. 9, 2010) (Binder, M.J.), *report and recommendation adopted*, No. 10-10426, 2011 WL 833792 (E.D. Mich. Mar. 4, 2011) (Battani, J.). More to the point, Plaintiff reasonably contends that Dr. Jankowski was indicating Plaintiff "would have impairment-related restrictions in

12

her ability to lift, bend, twist, or stand . . . [,]" and providing an opinion that Plaintiff could only perform work that "did not involve lifting, bending, twisting or standing" and "would allow her to periodically be absent for flare-ups . . . ."  (ECF No. 13, PageID.1969.)  All of this is relevant to the RFC and, in turn, to the VE's opinion on work Plaintiff could perform.

Also, Plaintiff convincingly argues that the ALJ's reference to Dr. Bitkowski's disability certificates (*see* ECF No. 9, PageID.53, 479, 500, 508) does not absolve the ALJ of "his duty to evaluate the separate medical opinion from Dr. Jankowski under 416.920c(c)."  (ECF No. 11, PageID.1940.)  Plaintiff admits that an ALJ need not cite each and every piece of evidence.  (*Id*.; ECF No. 13, PageID.1969.)  *See, e.g., Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (citing *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)) ("While it might be helpful for an ALJ to articulate his reasons for crediting or discrediting each ... opinion, it is well settled that 'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.' ").  Yet, the ALJ's evaluation of Dr. Bitkowski's disability certificates and opinion did not address "supportability" or "consistency" as contemplated by 20 C.F.R. § 416.920c(c)(1),(2). Although he concluded they were "neither inherently persuasive nor supportable," the ALJ simply explained "they are short term, with no specific limitations[,]" and "the issue of disability is

13

reserved to the Commissioner." (ECF No. 9, PageID.53.) It may well be that, on remand, the ALJ gives little weight to Dr. Bitkowski's opinion on various bases, including "supportability" or "consistency," but it is not the task of the Court to conjecture what would have happened if the ALJ had properly articulated an assessment.[3]

In sum, the Court should conclude that Dr. Jankowski's assessment meets the 20 C.F.R. § 416.913(a)(2)(i)(A) definition of a medical opinion, and, accordingly, "the ALJ was required to evaluate the supportability and consistency of this opinion with the record under 20 C.F.R. § 416.920c." (ECF No .11, PageID.1940.)

---

[3] In a 2017 criminal case unrelated to the matter at bar, Dr. Jankowski was indicted, and a second superseding indictment was filed in September 2019. The case appears to be ongoing, as Judge Friedman held a bond and scheduling hearing in November 2022, and the sentencing and forfeiture hearing is set for March 2023. (*See* 2:17-cr-20401-BAF-DRG-1.) The Commissioner points out that, if this case is remanded, the ALJ would be entitled to consider "alleged fraud" as an "other factor" that "justifies giving his opinions less weight[,]" (ECF No. 12, PageID.1953-1954 n.2); however, as Plaintiff points out in her response/reply brief, "although Commissioner suggests that the ALJ could consider the fact that Dr. Jankowski was indicted in 2017 related to his prescribing of pain medications, as it stands, the ALJ's decision contains no such discussion of the merits of Dr. Jankowski's assessment at all . . . ." (ECF No. 13, PageID.1970-1971.) And, in the end, even if it turns out that Dr. Jankowski was dishonest in prescribing pain medications to some of his patients, this does not necessarily equate to an inaccurate assessment of *this particular* patient.

14

ii.     Harmless error

The second disagreement is whether the ALJ's failure to discuss this form is harmless.  The Commissioner contends it was harmless, because Dr. Jankowski was opining that Plaintiff could not perform her then-current job, and the ALJ here found Plaintiff was unable to perform her past relevant work, namely a Fast Food Worker (DOT# 311.472-010).  (ECF No. 9, PageID.57; ECF No. 12, PageID.1954-1955.)  The Commissioner suggests that "the ALJ's failure explicitly to discuss and weigh [Dr. Jankowski's opinion] was, at most, a harmless error because adopting [it] would not entitle Plaintiff to benefits." *Soucie v. Comm'r of Soc. Sec.*, No. 2:16-CV-10576, 2016 WL 11259073, at *8 (E.D. Mich. Oct. 24, 2016) (Patti, M.J.), *report and recommendation adopted*, No. 16-10576, 2017 WL 727279 (E.D. Mich. Feb. 24, 2017) (Lawson, J.).  However, even though the form identifies Plaintiff's job title as "crew" and her essential job functions as "cashier, dishwashing," (*id.*, PageID.442, 492), Dr. Jankowski still noted that Plaintiff was unable to perform lifting, bending, twisting, or standing – of which at least lifting and standing are activities not excluded by the RFC's exertional factors of light work and a cane for ambulation (*id.*, PageID.52).[4]  Plaintiff is correct that Dr.

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing

15

Jankowski's limitations exceed, or are more restrictive than, those included in the ALJ's RFC determination. (ECF No. 11, PageID.1938.) Thus, contrary to the Commissioner's suggestion, "if the ALJ had evaluated and credited Dr. Jankowski's determination," there *may have been* a change in his decision. (*See* ECF No. 12, PageID.1955.) Moreover, at the administrative hearing, the ALJ's first hypothetical to the VE involved light work with postural, environmental, and manipulative limitations (ECF No. 9-2, PageID.102), and the second hypothetical added use of a cane for ambulation, as to which the ALJ offered some sedentary jobs, *i.e.*, document preparer, surveillance monitor, and address clerk (*id.*, PageID.103-104). Thus, as Plaintiff rightly points out, "[t]he ALJ asked no hypothetical question of the VE about jobs available that would require no lifting, bending, twisting, or standing at all." (ECF No. 11, PageID.1938-1939.)[5]

---

a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

[5] Additionally, the ALJ and Plaintiff's counsel asked VE Reno about being off-task and absenteeism. (ECF No. 9-2, PageID.104-106.) *Inter alia*, the VE testified that "even one absence per month on a consistent basis will result in termination." (*Id.*, PageID.104.) Noting that the ALJ failed to include any absenteeism in the RFC assessment[,]" Plaintiff contends ""the failure to discuss Dr. Jankowski's opinion regarding absences was, again, not harmless . . . ." (ECF No. 11, PageID.1939 (citing ECF No. 9-2. PageID.104).)

The Commissioner also contends that, even if the Court interprets Dr. Jankowski's April 6, 2018 opinion as not limited to her then-current job: (a) "the doctor's statement would be *equivalent* to a conclusion that Plaintiff could not work," which is "an opinion on an issue reserved to the Commissioner[;]" and, (b) such a conclusion "is inherently neither valuable nor persuasive to the issue of whether [she is] disabled . . . [,]" therefore, the Social Security Administration "will not provide any analysis about how [it] considered such evidence in [its] determination or decision, even under § 416.920c[.]" (ECF No. 12, PageID.1955-1956 (emphasis added).) *See* 20 C.F.R. § 416.920b(c).

The Commissioner's equivalency argument is an interesting one, because Dr. Jankowski opined that Plaintiff was unable to lift, bend, twist, or stand (*see* ECF No. 9, PageID.443, 493), and neither side seems to contest that sedentary work involves some lifting and standing.[6] (*See* ECF No. 11, PageID.1939.) Nevertheless, while the ALJ may not have been obligated to evaluate an opinion or conclusion that Plaintiff was *disabled*, the question here is whether the ALJ was

---

[6] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

17

obligated to evaluate an opinion or conclusion that Plaintiff was *unable to lift, bend, twist, and stand*. For the reasons stated above, he was.

F.  **Conclusion**

Plaintiff correctly notes that "the ALJ failed to discuss or evaluate medical evidence documenting limitations [Plaintiff] would have in a work setting[,]" limitations which "came from a medical source who worked at an office where [Plaintiff] received ongoing treatment." (ECF No. 13, PageID.1970.) As discussed above, Dr. Jankowski's form constitutes a 20 C.F.R. § 416.913(a)(2) medical opinion, and it is not obvious that the ALJ's failure to discuss it was harmless. Moreover, the Undersigned cannot help but notice the following points, which may or may not affect the ALJ's conclusion as to the "supportability" and "consistency" factors: (1) this April 6, 2018 evidence is dated the same month as Plaintiff's April 24, 2018 application for SSI benefits (ECF No. 9, PageID.309-314); and, (2) it appears that Dr. Jankowski assisted Jeffrey Wingate, M.D. with Plaintiff's May 15, 2018 surgery (*id.*, PageID.558, 560, 575).[7] This matter should

---

[7] The administrative record's index of exhibits also lists a treating source statement from surgeon Jeffrey Wingate, M.D. (ECF No. 9, PageID.32, 63, 418.) The ALJ references the May 10, 2018 consultation with Dr. Wingate (*see* ECF No. 9, PageID.586-590), the May 15, 2018 surgery (*see id.*, PageID.575-578, 583-584), the June 4, 2018 "two-week post-operative visit" (*id.*, PageID.585, 592), and the July 18, 2018 "two-month post-surgical follow up" (*id.*, PageID.591). (*Id.*, PageID.54.) The ALJ's consideration of these documents does not appear to be the focus of Plaintiff's appeal. (*See* ECF No. 11, PageID.1928-1930.)

be remanded for the ALJ to discuss Dr. Jankowski's April 6, 2018 form in accordance with 20 C.F.R. § 416.920c and, if necessary, adjust any portions of the 5-step sequential evaluation, including, but not necessarily limited to, the hypotheticals to the VE.

At its heart, this appeal concerns the ALJ's treatment of the opinion evidence. (ECF No. 11, PageID.1936-1944; ECF No. 13.) Plaintiff has the burden of proof on her statement(s) of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five."). As detailed in the foregoing discussion, Plaintiff has shown a legal error in the ALJ's RFC determination and the Undersigned finds that it is not necessarily harmless. Accordingly, for the foregoing reasons, it is **RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary judgment (ECF No. 11), **DENY** Defendant's motion for summary judgment (ECF No. 12), and **REMAND** this matter to the Commissioner for action consistent with this report.

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must precisely recite the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: February 13, 2023

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE